## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

Katherine Yaryan,                          Case No.:
                                           Division:
     Plaintiff,

vs.

Landstar Transportation Logistics, Inc.,


     Defendant.
_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Katherine Yaryan, sues Defendant, Landstar Transportation Logistics, Inc., and alleges:

## PRELIMINARY STATEMENT

1.     This is a suit for damages and injunctive relief under Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. §2000e *et seq*., the Florida Civil Rights Act (FCRA) of 1992, Fla. Stat. §760.01 *et. seq*., Title I of the Americans with Disabilities Act (ADA) of 1990, as amended in 2008, 42 U.S.C. 12101 *et. seq*., and the Family Medical Leave Act (FMLA), 29 U.S.C. §28, *et. seq*.

## JURISDICTION AND VENUE

2     Jurisdiction is proper under 28 U.S.C. §1331, §1343,  Title VII of the

1

Civil Rights Act, FCRA, ADA and FMLA. The Court has supplemental jurisdiction over Plaintiff's state claims pursuant to 28 U.S.C. §1367.

3. Defendant is a foreign corporation licensed to do business in the state of Florida.

4. Venue is proper in the United States District Court for the Middle District of Florida, Jacksonville Division, pursuant to 28 U.S.C. §1391(b). Defendant resides in this district and during the relevant time Defendant conducted business in Jacksonville, Duval County, Florida. In addition, the wrongful conduct occurred in Nassau County.

## THE PARTIES

5. Plaintiff, Katherine Yaryan (hereinafter "Ms. Yaryan" or "Plaintiff"), has at all material times been a citizen of the United States and resident of Clay, Florida. She was employed by Defendant, in Duval, Florida, and previously Mesa, Arizona, at all times material to the instant complaint.

6. Defendant, Landstar Transportation Logistics, Inc. (hereinafter "Landstar" or "Defendant") is a foreign for-profit corporation and employed Plaintiff, at all times material to this complaint.

7. Defendant is engaged in a business affecting interstate commerce and is an "employer" within the meaning of Title VII, FCRA, and are governed by these laws.

2

8.    Defendant is an "employer" within the meaning of the FCRA, Title VII, ADA, and FMLA.

## CONDITIONS PRECEDENT

9.    Plaintiff has complied with all condition's precedent to the filing of this claim required by the Florida Civil Rights Act of 1992. A timely charge of discrimination was filed with the Florida Commission on Human Relations within 365 days of the discriminatory acts complained of herein. Said charge of discrimination was pending more than 180 days without any determination being made by the Florida Commission on Human Relations. This action was filed within four years of the discriminatory acts. Plaintiff has complied with all condition's precedent to the filing of this suit required by Title VII and ADA. A Charge of Discrimination was filed by Plaintiff with the Equal Employment Opportunity Commission in a deferral State within 300 days of the alleged unlawful employment practices. Plaintiff has filed this suit within 90 days of receiving a right to sue notice. All administrative prerequisites have been satisfied and this suit is timely filed.

## STATEMENT OF FACTS

10.    Ms. Yaryan began working for Landstar on December 31, 2018, as an Orientation Coordinator. In February 2021 Ms. Yaryan was promoted to Supervisor of the Western Field Office. On or about December 16, 2021, Ms. Yaryan was

promoted to the position of Manager of the Southern Field Operation Centers, at a salary rate of $67,000 per year and a 10% bonus.

11.     As a skilled and experienced employee, Ms. Yaryan performed her work in a competent and professional manner and achieved consistently good results as demonstrated by her receipt of a promotion, regular pay increases, positive assessments of her performance and the lack of substantiated or documented history of poor performance.

12.     Ms. Yaryan was named Employee Of The Month in 2020 and she also won Employee Of The Year during 2020 for the first time anyone in the field has ever been awarded this honor. Ms. Yaryan was then named Employee Of The Month in 2021 while she was Employee Of The Year, in fact she was the only field employee to win Employee Of The Month in 2021.

13.     Beginning in approximately October 2021, Ms. Yaryan began experiencing sexual harassment at work. Mrs. Yaryan reported that Timothy Kautzer was starting to have feelings for her in October 2021 and was making comments indicating obsessive behavior and romantic interest in her, to her Landstar supervisor, (Manager of the Western Field Operation Centers, Chris Cleveland). Mr. Cleveland did not properly handle Ms. Yaryan's report of unlawful discrimination in the workplace. Ms. Yaryan reported the same employee, Timothy Kautzer, to Mark Gillette Director of Operations.

14.     Tim Kautzer became jealous of an employee, Chris Thorson. He therefore became overbearing and demanding of Mrs. Yaryan's time. Tim Kautzer made a comment to Chris Thorson when Ms. Yaryan was in Florida interviewing for the manager position and that the only reason he is still here is because of her. Chris Thorson found this comment disturbing, so he told Mrs. Yaryan about it.

15.     When Ms. Yaryan told Mark Gillette about Tim Kautzer leaving if she got promoted, he made light of the situation during a managers' meeting. Michelle Brummett told her about the comment after she was promoted.

16.     Michelle Brummet told Ms. Yaryan about this meeting between Mark Gillette (Director of operations), Gregg Nelson (Vice president of Operations) Melissa Miller (Manager of Contractor Services), Chris Cleveland (Manager of Western Field Operations Centers) and Michelle Brummett (Manager of Northern Field Operations Centers), where Mr. Gillette was laughing when telling them they would be down an employee because Tim Kautzer had a crush on Ms. Yaryan. Michelle Brummet was upset that Mark Gillette was laughing at that and that he thought it was funny, and she did not want it to become a larger problem.

17.     Nothing was done when Ms. Yaryan reported concerns about Tim Kautzer's conduct towards and his romantic interest in her. Thereafter, predictably, Tim Kautzer felt as though his conduct would not be called into question, so he escalated his sexual harassment.

18.     On December 10, 2021, Ms. Yaryan was sexually assaulted by Mr. Kautzer. He grabbed her vagina. Plaintiff complained about this to Mark Gillette and HR in Jacksonville. Ms. Yaryan had documented the incident to talk to Chris Cleveland, but Tim Kautzer escalated the situation about two hours later and she feared for her life and also for other employees

19.     Immediately, after the sexual assault described in paragraph (13), Ms. Yaryan went to the women's restroom and sent a message to Chris Thorton (a co-worker on site) with her watch (she did not have her cell phone at the time). In the message, she explained what happened and asked him to meet her in the garage. Mr. Thorton replied that he did not see it.

20.     After Ms. Yaryan returned from lunch, Tim Kautzer came into her office, blocking her in her desk at which point he exposed his erect penis an inch away from her face.

21.     Shortly thereafter, Ms. Yaryan left the office for her personal safety and Chris Thorton's (the other employee on site at the time). She got herself and her employee out of the building to safety. This was imperative because Mr. Kautzer was known to be armed at work (as he had talked about his gun in his truck) and had been acting erratically for the past few days. Notably, this odd behavior began when he learned that Ms. Yaryan received a promotion and would be re-locating out of state. Mr. Kautzer had also made threatening statements previously which alluded to

self-harm and his ability to harm others to Chris Thorson, which Plaintiff believes were known to management of Landstar.

22.    After she left the office, she called her direct supervisor Chris Cleveland. There was no answer so Ms. Yaryan texted him "call ASAP" so that he would know it was important.

23.    Ms. Yaryan then called Mark Gillette and he did not answer. Both were apparently off of work on this day. Right as Ms. Yaryan was about to make another call to report the incidents, she received a call back from Mr. Gillette. Ms. Yaryan explained everything that occurred to Mr. Gillette. He said that they needed to contact Carolyn Lyman. He said he did not have her direct number and directed Ms. Yaryan to call HR (Carolyn Lyman) through the HR office number in Jacksonville.

24.    Ms. Yaryan called Ms. Lyman and tried to contact her for forty-five (45) minutes. She tried to contact her through TEAMS and did not reach her. She also messaged Lee Ann Buck on TEAMS stating they needed to contact Carolyn ASAP. Ms. Buck asked for Ms. Yaryan's number.

25.    It was not until two hours later that Ms. Lyman called Ms. Yaryan back even though multiple employees had also contacted her to let her know how important it was. Mr. Gillette called Ms. Yaryan back and stated that he spoke to Gregg Nelson, and they wanted her to call the police and have them respond until they could contact HR. She called the police.

26.    Yaryan had not recognized the conduct of Mr. Kautzer, prior to the assaults and severe harassment occurring on October 10, 2021, as constituting severe or pervasive sexual harassment. Her reports to management did not allege it to be sexual harassment. She did report the odd behavior and romantic interest. After she reported the severe sexual harassment, Mr. Kautzer never returned to work, so the harassment did not continue past the events on October 21, 2021. Therefore, she was not on notice to pursue a claim of sexual harassment with the EEOC as of this time.

27.    Management could have responded sooner to Ms. Yaryan's concerns and the concerns it should have already had regarding the fitness of Mr. Kautzer for employment. Landstar negligently retained Mr. Kautzer which permitted him to continue his harassment of Ms. Yaryan. This conduct started with obsessive and odd behavior and comments, and escalated to sexual assault. Even after reporting these incidents to management numerous times, Landstar took no responsibility to actually deal with the situation and effectively outsourced Mr. Kautzer's removal from the office to law enforcement.

28.    When the police had arrived, they found a loaded 45 caliber gun in Mr. Kautzer's desk. Ms. Yaryan had to stay at work late to have a locksmith change the locks. The next day no one from Landstar contacted Ms. Yaryan to check on her or to express any form of contrition or regret regarding what Ms. Yaryan experienced the day prior. The police never located Mr. Kautzer and as a result, Ms. Yaryan

moved up her move date to flee the state. Ms. Yaryan moved around the end of January 2022 and her first day in the Jacksonville, Florida office was February 4, 2022.

29.    There were numerous problems presented right away with the Florida Field Operation Center (FOC). These included employees taking excessive lunch breaks and other non-compliance with company policies. As the Field Office Manager, Ms. Yaryan appropriately addressed the deficient performance issues amongst her subordinates.

30.    In July 2022, Landstar had an "All-Star" weekend in Orlando, Florida. Ms. Yaryan was assigned to work the check in area. Those who attended the event included the independent contractors who drive trucks for Defendant, who are called BCOs (Business Capacity Owners). One of the BCOs, Mr. Self, approached her and started a conversation as they somehow knew each other. He indicated that he knew a lot about Ms. Yaryan. Mr. Self stayed around Ms. Yaryan's personal space and continuously stared at her.

31.    Ms. Yaryan was uncomfortable and asked her co-manager Chris Cleveland to come over and walk her to her room. The behavior was reported to her direct supervisor Mark Gillette and the fact her husband was concerned and wanted to know if he needed to come to Orlando. The BCO's inappropriate behavior was seen by Chris Cleveland, Mark Gillette, Michelle Brummett, Melissa Miller and

Steve Blankenship. There were two female directors who were aware of the situation and wanted to cancel BCO Mr. Self's lease, but they were advised by that they could not do so.

32.     The whole weekend the BCO was watching Ms. Yaryan and would approach her any chance he had and would direct unwanted inappropriate comments to her. The comments telling her that she looks fine, asking if she was there alone, that he  wants to get to know you better, and he just followed her wherever she went.

33.     One night there was an event in the bar after 80's night where one of the Directors, Steve Blankenship, walked with Ms. Yaryan to the bar area. The BCO was present and stared at Ms. Yaryan while she spoke with the Director. Mr. Blankenship left before Ms. Yaryan did and he sent her a text message to be careful as the BCO's actions scared him. Mr. Blankenship, who was former law enforcement, told Ms. Yaryan that he would come back to the bar to walk her to her room if needed. Ms. Yaryan was able to leave the bar with another co-worker and texted the Director that she was able to get an escort to her room.

34.     The issues with this BOC continued after this incident. The harassment continued on Awards Night. At that time, Mr. Self interrupted Ms. Yaryan leaving with the Director and started asking her questions about when she will be at the St. Augustine yard. Once she got away from him, the Director noticing the concerning behavior of the BOC even stated to Ms. Yaryan's supervisor, Mr. Mark Gillette and

Chris Cleveland, that they needed to be concerned about his BCO's behavior. No counseling or corrective action was taken regarding the BCO.

35.     On or about November 8, 2022, Mrs. Yaryan was at the St. Augustine center. As she walked through the lobby a BCO named "KC" was there and he walked over and gave her a hug. While he was giving her a hug, he started forcibly kissing her on the neck. Mrs. Yaryan pulled away and went outside. When she stepped outside, she was on a call with Gregg Nelson and Mark Gillette. At this time, she advised them both of what had happened. Gregg said "not to interrupt …. but do you know how many BCO's kiss my neck?" They both failed to take is seriously.

36.     Mrs. Yaryan reported it to Human Resources in Rockford where HR Manager Linda Lawrence wouldn't do anything about it. This was consistent with how the company handled her prior sexual harassment complaints They were never taken seriously.

37.     Michelle Brummett and Chris Cleveland, both told her about a former Orientation Coordinator in Rockford got a sexual harassment complaint filed against him in HR instead of firing the employee (Steve Hoofner) they moved him into the department to work with the woman who filed the complaint. This was all at the doing of Gregg Nelson because he was a long-time employee and didn't want to get rid of him. Steve eventually lost his job for sleeping on the job and only because Michelle Brummett pushed the firing.

38.    For the foregoing reasons Plaintiff asserts that Defendant failed to exercise reasonable care to prevent and correct promptly any sexually harassing behavior. Ms. Yaryan suffered extremely severe harassment in Arizona which stopped only because the police were called. When the sexual harassment from the BCOs was ignored she was left with no other conclusion other than that the company's culture excused and tolerated harassment, including but not limited to harassment from BOCs.

39.    Ms. Yaryan was told by Mark Gillette and others that the BCOs can do anything they want especially if they were bringing in money. This was consistent with the comment that VP Nelson made to Plaintiff when she told him that she was upset over the BCO kissing her neck. Although the BCOs were independent contractors, Defendant still had a legal duty to address sexual harassment regardless of the source, and to ensure a work environment free of sexual harassment. The harassment Ms. Yaryan suffered was like and related and constitutes an unlawful employment practice and continuing violation. The company's culture reflects a toleration of sexual harassment and inappropriate behavior. When the sexually harassing conduct continued in Florida, was severe or pervasive, and when management failed to promptly address the harassment or take remedial action, Plaintiff was then on notice that her claim was ripe for filing with the EEOC.

40.     Plaintiff filed a timely charge of discrimination with EEOC/FCHR, including the acts of harassment specified herein. As such, given that the harassment and the toleration of it is like or related,  the acts of harassment preceding the filing period are part of a continuing violation.

41.     The next Monday Ms. Yaryan returned as her husband was released home on blood thinners. However, on February 9, 2023, he started bleeding and was admitted back into the hospital. Ms. Yaryan was allowed to leave around 3:00 PM and work from the hospital. She was given approval to work from home that Friday. But Mr. Gillette later changed his mind.

42.     After the Friday conference call Mark Gillette called Ms. Yaryan and told her that she had to take the rest of the day off and could not work remotely. Mark Gillette works from home every day himself. This is not unusual but now it was a problem for him for Plaintiff to work from home. Plaintiff returned the following Monday, February 13, 2023. Landstar never informed Plaintiff of her FMLA rights, even though it was on notice and was legally obligated to do so, but the leave time was in fact FMLA protected.

43.     On or about January 30, 2023, Mark Gillette contacted Greg Wright. Mr. Wright informed Plaintiff about Mark Gillette calling him with outrageous claims (e.g. false claims of bullying and racism) and  that he told Mr. Gillette they weren't true and that she had taught them how to do hazmat better and that she was

getting a bad rap because of the things happening in Florida. Plaintiff did not do any of the things that she was accused of regarding the events at the Georgia FOC the week of January 23, 2023.

44.    Plaintiff had not been told of any complaints from the Georgia FOC meeting. Defendant never informed her of an investigation, nor was she given a chance to defend herself.  Plaintiff was made aware that Mark Gillette on numerous occasions called Greg Wright trying to get him to say anything negative about her, e.g., unprofessional behavior.

45.    Landstar was attempting to concoct an issue where there was none, to discriminate and retaliate against Plaintiff for her prior complaints of sexual harassment and to continue to discriminate against her based on her sex. Plaintiff also asserts that her own health situation, her husband's medical issues and the leave she was required to take as a result also motivated Defendant to terminate her employment.

46.    On February 13, 2023, Landstar presented Plaintiff with an "Employee Warning Notice" which stated that due to "unprofessional conduct" she was being terminated. In contrast, Defendant did not discipline a supervisor, Greg Wright, who did not have the same protected characteristics. He is African American (Plaintiff is white), male, and he has no known disabilities, did not similarly take or request FMLA protected leave, and did not similarly complain of sexual harassment.

Defendant discriminated against Plaintiff based on her race (white), sex (female), and disability, and retaliated against her due to her protected activity.

47.    Plaintiff is a qualified person with a disability/handicap. Plaintiff's condition substantially limited one or more major life activities on more than a temporary or transient basis, either with or without mitigating measures, and was also perceived as being disabled/handicap. Plaintiff was discriminated against and subjected to disparate treatment and discrimination on the basis of disability/handicap and/or perceived disability/handicap and would not have been discriminated against but for these unlawful factors. Plaintiff was also retaliated against for having requested that her alleged disability be accommodated and for taking FMLA protected leave. Plaintiff was terminated within days of her return from medical leave.

48.    Plaintiff was terminated because of her sex and in retaliation for her complaints of sexual harassment in violation of Title VII and FCRA.

49.    Defendant discriminated against Plaintiff due to her disability/handicap and/or perceived disability/handicap., and retaliated against her for protected activity in violation of ADA and FCRA.

50.    During Plaintiff's employment, Defendant subjected her to unlawful treatment because of her sex and because of her complaints of sexual harassment she was experiencing in the workplace. Plaintiff was subjected to unwelcome conduct

based on her sex during her employment. Landstar knew about it and failed to prevent or stop it. Upon Plaintiff reporting of the discriminatory and unlawful actions taken against her, Defendant subjected Plaintiff to further discrimination and retaliation. Landstar terminated Plaintiff because of her sex and in retaliation for her complaints of sex discrimination.

51.   Prior to Plaintiff's termination, Plaintiff had excellent performance, prior warnings which was in violation of Defendant's progressive disciplinary policy. Plaintiff was never issued any final warning, put on a performance plan or Defendant did not follow the progressive discipline that is applicable to employees in general. Further, Plaintiff was discharged within days of returning from FMLA protected leave.

## COUNT I

### SEXUAL HARASSMENT IN VIOLATION
### OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

52.   Plaintiff hereby restates and realleges each and every factual allegation contained in paragraphs 1 through 51.

53.   The harassment of Plaintiff was of a sexual nature and/or based on gender, and would not have occurred but for Plaintiff's sex (female). Plaintiff, was subjected to continual and degrading harassment by a co-worker and BCOs, rising to the level of being severe and pervasive

54.     Although the employer knew or should have known about the harassment, no prompt effective remedial action was taken and the employer instead retaliated against Plaintiff. Defendant failed to exercise reasonable care to prevent sexual harassment by failing to address a workplace permeated with sexual harassment. The sexual harassment of Plaintiff included actions that affected tangible aspects of Plaintiff's employment.

55.     As a result of the discrimination and harassment described above, Plaintiff has suffered damages.

56.     The plaintiff has been required to retain the undersigned counsel to represent her in this matter and has accordingly incurred attorney fees and will continue to do so until this case is resolved. Plaintiff is entitled to recovery of attorney's fees under Title VII.

WHEREFORE, Plaintiff demands a trial by jury and relief in the form of lost wages, back pay, emotional distress and compensatory damages, punitive damages, equitable relief and  attorney's fees and costs, prejudgment interest, and any other such relief that the Court deems just and proper.

## <u>COUNT II</u>

### RETALIATION IN VIOLATION OF
### TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

57.     Plaintiff hereby restates and realleges each and every factual allegation contained in paragraphs 1- 51.

58.    Plaintiff engaged in protected activity, because she complained about unlawful sexual harassment.   Plaintiff was retaliated against when she was terminated from her employment on or about February 13, 2023, for false and pretextual reasons.   Plaintiff would not have been terminated but for her protected complaint.

59.    As a direct and proximate result of the retaliation described above, Plaintiff has suffered and continues to suffer loss of income, and loss of other employment benefits.   In addition, Plaintiff has suffered and continues to suffer mental anguish, distress, humiliation, expense, and loss of enjoyment of life.

60.    The plaintiff has been required to retain the undersigned counsel to represent her in this matter and has accordingly incurred attorney's fees and will continue to do so until this case is resolved. Plaintiff is entitled to recovery of attorney's fees under Title VII.

WHEREFORE, Plaintiff demands a trial by jury and relief in the form of economic damages, backpay, front pay, compensatory and emotional distress damages, punitive damages, damages for loss of earning capacity, reimbursement for attorneys' fees and costs, prejudgment interest, equitable relief, and any other such relief that the Court deems appropriate.

## COUNT III

## HARASSMENT BASED ON SEX, IN VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT (FRCA) OF 1992

61.    Plaintiff hereby restates and realleges each and every factual allegation contained in paragraphs 1- 51.

62.    The harassment of Plaintiff was of a sexual nature and/or based on gender, and would not have occurred but for Plaintiff's sex (female).  Plaintiff, was subjected to continual and degrading harassment by a co-worker and BCOs, rising to the level of being severe and pervasive

63.    Although the employer knew or should have known about the harassment, no prompt effective remedial action was taken and the employer instead retaliated against Plaintiff. Defendant failed to exercise reasonable care to prevent sexual harassment by failing to address a workplace permeated with sexual harassment. The sexual harassment of Plaintiff included actions that affected tangible aspects of Plaintiff's employment.

64.    As a result of the discrimination and harassment described above, Plaintiff has suffered damages.

65.    The plaintiff has been required to retain the undersigned counsel to represent her in this matter and has accordingly incurred attorney fees and will continue to do so until this case is resolved. Plaintiff is entitled to recovery of attorney's fees under FRCA.

WHEREFORE, Plaintiff demands a trial by jury and relief in the form of lost wages, back pay, emotional distress and compensatory damages, punitive damages,

equitable relief and  attorney's fees and costs, prejudgment interest, and any other such relief that the Court deems just and proper.

## COUNT IV

### RETALIATION IN VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT (FCRA) OF 1992, FLA. STAT. § 760 *ET SEQ*

66.     Plaintiff hereby restates and re-alleges each and every factual allegation contained in Paragraphs 1-51.

67.     Plaintiff engaged in protected activity, because she complained about unlawful sexual harassment. Plaintiff was retaliated against when she was terminated from her employment on or about February 13, 2023, for false and pretextual reasons.  Plaintiff would not have been terminated but for her protected complaint.

68.     As a direct and proximate result of the retaliation described above, Plaintiff has suffered and continues to suffer loss of income, and loss of other employment benefits.  In addition, Plaintiff has suffered and continues to suffer mental anguish, distress, humiliation, expense, and loss of enjoyment of life.

69.     The plaintiff has been required to retain the undersigned counsel to represent her in this matter and has accordingly incurred attorney's fees and will continue to do so until this case is resolved. Plaintiff is entitled to recovery of attorney's fees under FCRA.

WHEREFORE, Plaintiff demands a trial by jury and relief in the form of economic damages, backpay, front pay, compensatory and emotional distress damages, punitive damages, damages for loss of earning capacity, reimbursement for attorneys' fees and costs, prejudgment interest, equitable relief, and any other such relief that the Court deems appropriate.

## COUNT V

## NEGLIGENT RETENTION AND/OR SUPERVISION

70.    Plaintiff hereby restates and re-alleges each and every factual allegation contained in Paragraphs 1-51.

71.    Defendant was negligent in retaining and/or supervising defendant Tim Kautzer as an employee and in placing him in a position enabling him to continuing working around other employees in light of the Defendant's knowledge of defendant Tim Kautzer past actions indicating that he was unfit for such position. Mr. Kautzer was also known to violate company policy by bringing a loaded firearm to work with him. Mr. Kautzer was known

72.    As a direct and proximate of cause of Defendant's negligent retention and/or supervision of Tim Kautzer, plaintiff suffered emotional pain, physical distress, suffering, inconvenience, humiliation, embarrassment, indignity, mental anguish, loss of enjoyment of life, and other non-pecuniary losses, lost wages and benefits, loss of earning capacity, other pecuniary losses, and medical expenses.

WHEREFORE, Plaintiff demands a trial by jury and relief in the form of compensatory and emotional distress damages, punitive damages, injunctive relief, lost wages, punitive damages, and any other relief that may be available in law or equity.

## COUNT VI

**DISCRIMINATION ON THE BASIS OF RACE
IN VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT (FRCA)
OF 1992, FLA. STAT. §760, ET SEQ.**

73.     Plaintiff hereby restates and realleges each and every factual allegation contained in paragraphs 1- 51.

74.     Plaintiff is a member of a protected class (race-white), was qualified for her position, and suffered adverse employment action when she was terminated on, or about, February 13, 2023.

75.     Plaintiff's race was a motivating factor in Defendant's decision to terminate her employment. Plaintiff would not have been terminated but for her race. The reasons Defendant gave for the termination were pretextual.

76.     As a direct and proximate result of the discrimination described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of other employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation, great expense, and loss of enjoyment of life.

77.    Plaintiff has been required to retain the undersigned counsel to represent her in this matter and has accordingly incurred attorney's fees and will continue to do so until this case is resolved. The Plaintiff is entitled to recovery of attorney's fees under FRCA.

WHEREFORE, Plaintiff demands relief in the form of economic damages, back pay and front pay, compensatory and emotional distress damages, punitive damages, reimbursement for attorneys' fees and costs, prejudgment interest, equitable relief, and reinstatement, and any other such relief that the Court deems appropriate.

## COUNT VII

### RACE DISCRIMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED BY THE CIVIL RIGHTS ACT OF 1991, 42 U.S.C. 2000e *ET. SEQ.*

78.    Plaintiff hereby restates and re-alleges each and every factual allegation contained in paragraphs 1 through 51.

79.    Plaintiff is a member of a protected class (race-white), was qualified for her position and suffered adverse employment action when she was terminated on, or about, February 13, 2023.

80.    Plaintiff's race was a motivating factor in Defendant's decision to terminate her employment. Plaintiff would not have been terminated but for her race. The reasons Defendant gave for the termination were pretextual.

81.    The above-described discrimination was done by Defendant with a reckless disregard for Plaintiff's rights under federal law. As a result, Plaintiff has suffered damages.

82.    As a direct and proximate result of the discrimination described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of other employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation, great expense, and loss of enjoyment of life.

83.    Plaintiff has retained the undersigned counsel and has agreed to pay him a reasonable fee for his services herein.

84.    The Plaintiff has been required to retain the undersigned counsel to represent her in this matter and has accordingly incurred attorney's fees and will continue to do so until this case is resolved. Plaintiff is entitled to recovery of attorney's fees under Title VII of the Civil Rights Act of 1964.

WHEREFORE, Plaintiff demands relief in the form of economic damages, back pay, reinstatement or front pay, compensatory and emotional distress damages, prejudgment interest, damages for loss of earning capacity, repayment for attorneys' fees and costs pursuant to 42 U.S.C. § 2000e-5, punitive damages, prejudgment interest, equitable relief, and any and all other relief that the Court deems just, equitable, and proper.

## **COUNT VIII**

## **RACE DISCRIMINATION IN VIOLATION OF**
## **THE CIVIL RIGHTS ACT OF 1886, 42 U.S.C. § 1981 ET SEQ.**

85.     Plaintiff hereby restates and re-alleges each and every factual allegation contained in paragraphs 1 through 51.

86.     The unlawful discrimination against Plaintiff denied Plaintiff the same right to make and enforce contracts as enjoyed by Black citizens of the United States, in violation of the Thirteenth Amendment to the Constitution as protected by 42 U.S.C. § 1981, as amended in 1991.

87.     Plaintiff is a member of a protected class—race (white)—and suffered an adverse employment action when she was termination based on her race (White).

88.     Plaintiff's race was a motivating factor in Defendant's decision to terminate her employment. Plaintiff would not have been terminated but for her race. The reasons Defendant gave for the termination were pretextual.

89.     The discriminatory acts described above were done maliciously and with a reckless disregard for Plaintiff's rights. As a result, Plaintiff has suffered damages.

90.     Plaintiff has been required to retain the undersigned counsel to represent her in this matter and has accordingly incurred attorney's fees and will continue to do so until this case is resolved. Plaintiff is entitled to recovery of attorney's fees under Section 1981.

WHEREFORE, Plaintiff demands relief in the form of economic damages, backpay and front pay, compensatory and emotional distress damages, attorney's fees, punitive damages, prejudgment interest, injunctive relief and reinstatement, and any other such relief that the Court deems just and proper.

## COUNT IX

**DISCRIMINATION BASED ON SEX IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED BY THE CIVIL RIGHTS ACT OF 1991, 42 U.S.C. 2000 ET SEQ.**

91.    Plaintiff hereby restates and realleges each and every factual allegation contained in Paragraphs 1 through 51.

92.    Plaintiff is a female, qualified for her position, and was subjected to an adverse action (termination).

93.    Plaintiff's sex was a motivating factor in Defendant's decision to terminate her employment.  Plaintiff would not have been terminated but for her sex. The reasons Defendant gave for the termination were pretextual.

94.    The above described discrimination was done by Defendant with a reckless disregard for Plaintiff's rights under federal law.  As a result, Plaintiff has suffered damages.

95.    Plaintiff has been required to retain the undersigned counsel to represent her in this matter and has accordingly incurred attorney's fees and will

continue to do so until this case is resolved. Plaintiff is entitled to recovery of attorney's fees under Title VII.

WHEREFORE, Plaintiff demands relief in the form of economic damages, back pay and front pay, compensatory and emotional distress damages, injunctive relief and reinstatement, prejudgment interest, attorney's fees and costs, punitive damages, and any other such relief that the Court deems appropriate.

## COUNT X

## DISCRIMINATION BASED ON SEX, IN VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT (FRCA) OF 1992

96.     Plaintiff hereby restates and realleges each and every factual allegation contained in paragraphs 1- 51.

97.     Plaintiff is the member of a protected class (female), was qualified for her position, and suffered adverse employment action when she was terminated on or about February 13, 2023.

98.     Plaintiff's sex was a motivating factor in Defendant's decision to terminate her employment.  Plaintiff would not have been terminated but for her sex. The reasons Defendant gave for the termination were pretextual.

99.     The above-described discrimination was done by Defendant with a reckless disregard for Plaintiff's rights under federal law.  As a result, the Plaintiff has suffered damages.

100.   As a direct and proximate result of the discrimination described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of other employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation, great expense, and loss of enjoyment of life.

101.   Plaintiff has been required to retain the undersigned counsel to represent her in this matter and has accordingly incurred attorney's fees and will continue to do so until this case is resolved.   Plaintiff is entitled to recovery of attorney's fees under FRCA.

WHEREFORE, Plaintiff demands relief in the form of economic damages, back pay and front pay, compensatory and emotional distress damages, punitive damages, reimbursement for attorneys' fees pursuant to F.S. Chap 760, and costs, prejudgment interest, equitable relief and reinstatement, and any other such relief that the Court deems appropriate.

## COUNT XI

### DISABILITY DISCRIMINATION IN VIOLATION OF TITLE I OF THE AMERICANS WITH DISABILITIES ACT (ADA)

102.   The Plaintiff restates and re-alleges each and every factual allegation contained in paragraphs 1 through 51.

103.   At all material times, Plaintiff has been an individual with a "disability" within the meaning of Section 3(2) of the Americans with Disabilities Act, 42 U.S.C. § 12102(2).

104. Plaintiff is a "qualified individual with a disability" as that term is defined in '101(8) of the ADA, 42 U.S.C. § 12111(8). More specifically, the Plaintiff is an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the job.

105. Defendant's termination of Plaintiff was based on her impairment, and/or her record of such impairment and/or her having been regarded as having such impairment. Defendant would have continued to employee Plaintiff but for her disability.

106. The discriminatory practices described above were done by Defendant with malice or with reckless indifference to Plaintiff's federally protected rights.

107. Plaintiff has retained the undersigned counsel and has agreed to pay him a reasonable fee for his services herein.

108. Defendant's discrimination against Plaintiff due to her disability has caused, and will continue to cause, Plaintiff to suffer substantial damages for lost wages, other pecuniary losses, mental anguish, loss of enjoyment of life, and/or other nonpecuniary losses.

WHEREFORE, Plaintiff demands relief in the form of back pay, front pay, lost benefits, compensatory damages and emotional distress damages, punitive damages, attorney's fees, and costs with prejudgment interest thereon, injunctive

relief and reinstatement, and any other such relief that Plaintiff may be entitled to in law or equity.

## COUNT XII

### HANDICAP DISCRIMINATION IN VIOLATION OF FLORIDA CIVIL RIGHTS ACT (FCRA) OF 1992, FLA. STAT. 760 *ET SEQ*

109.    The Plaintiff restates and realleges each and every factual allegation contained in paragraphs 1 through 51.

110.    Plaintiff's condition qualifies as a handicap under the FCRA and/or perceived handicap.

111.    Plaintiff's handicap was a motivating factor in Plaintiff's termination and she would not have been terminated otherwise.

112.    Defendant's termination of Plaintiff due to her handicap has caused, and will continue to cause, Plaintiff to suffer substantial damages for lost wages, other pecuniary losses, mental anguish, loss of enjoyment of life, and other nonpecuniary losses.

113.    The discriminatory practices described above were done by Defendant willfully, intentionally, maliciously and with a reckless disregard for Plaintiff's rights under the FCRA.

114.    Plaintiff has retained the undersigned counsel and has agreed to pay him a reasonable fee for his services herein.

115.    Defendant's termination of Plaintiff due to her handicap has caused, and will continue to cause, Plaintiff to suffer substantial damages for lost wages, other pecuniary losses, mental anguish, loss of enjoyment of life, and other nonpecuniary losses.

WHEREFORE, Plaintiff demands relief in the form of back pay, front pay, lost benefits, compensatory damages and emotional distress damages, punitive damages, attorneys' fees, and costs under the FCRA, prejudgment interest thereon, injunctive relief and reinstatement, and any other such relief that Plaintiff may be entitled to under law or equity.

## COUNT XIII

### RETALIATION IN VIOLATION OF TITLE I OF THE AMERICANS WITH DISABILITIES ACT (ADA)

116.    Plaintiff hereby restates and re-alleges each and every factual allegation contained Paragraphs 1 through 51.

117.    At all times material to this complaint, Plaintiff has been an individual with a disability within the meaning of Section 3(2) of the Americans with Disability Act, 42 U.S.C. § 12102(2). Plaintiff is a qualified individual with a disability as the term is defined in Section

101(8) of the ADA, 42 U.S.C. § 12111(8).   More specifically, Plaintiff is an individual with a disability who, with or without a reasonable accommodation, can perform the essential functions of the job.

118.   Plaintiff sought reasonable accommodations for her disability.

119.   Plaintiff's protected activity in requesting a reasonable accommodation was a motivating factor in the termination of her employment, and she would not have been terminated otherwise.

120.   The discriminatory and retaliatory practices described above were done by Defendant with malice or with reckless indifference to Plaintiff's federally protected rights.

121.   Defendant's discrimination and retaliation against Plaintiff due to her protected activity has caused, continues to cause, and will cause Plaintiff to suffer substantial damages for lost wages, other pecuniary losses, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

122.   Plaintiff has retained the undersigned counsel and has agreed to pay them a reasonable fee for their services herein.

WHEREFORE, Plaintiff demands relief in the form of back pay, front pay, lost benefits, compensatory damages and emotional distress damages, punitive damages, attorney's fees, and costs with prejudgment interest thereon, injunctive relief and reinstatement, and any other such relief that Plaintiff may be entitled to under law or equity.

## COUNT XIV

**RETALIATION IN VIOLATION OF THE
FLORIDA CIVIL RIGHTS ACT (FCRA) OF 1992, FLA. STAT. 760 *ET SEQ***

123.    Plaintiff hereby restates and re-alleges each and every factual allegation contained in Paragraphs 1 through 51.

124.    Plaintiff's impairment qualifies as a handicap within the meaning of the FCRA. Plaintiff was entitled to a reasonable accommodation. Further, Defendant was required to engage, in good faith, in an interactive process with Plaintiff to arrive at a reasonable accommodation.

125.    Plaintiff sought reasonable accommodation and therefore engaged in protected activity.

126.    Plaintiff's protected activity in requesting a reasonable accommodation, was a motivating factor in, if not the but-for cause of, his termination.

127.    The employer's actions were done intentionally, willfully and maliciously and with a reckless disregard for Plaintiff's rights under the FCRA.

128.    Plaintiff has retained the undersigned counsel and has agreed to pay them a reasonable fee for their services herein.

129.    Defendant's discrimination and retaliation against Plaintiff due to his handicap and his request for a reasonable accommodation has caused, and will continue to cause, Plaintiff to suffer substantial damages for lost wages, other

pecuniary losses, mental anguish, loss of enjoyment of life, and other nonpecuniary losses.

WHEREFORE, Plaintiff demands relief in the form of lost wages, back pay and front pay, compensatory damages, punitive damages, emotional distress damages, prejudgment interest, attorney's fees, and costs under the FCRA, injunctive relief, including reinstatement and any other such relief that the Court deems just and appropriate.

## COUNT XV

**UNLAWFUL INTERFERENCE AND RETALIATION
IN VIOLATION OF FAMILY AND MEDICAL LEAVE ACT
(FMLA), 29 U.S.C. 628, *ET. SEQ.***

130.    Plaintiff hereby restates and realleges each and every factual allegation contained in Paragraphs 1 through 51.

131.    During all material times, Defendant had 50 or more employees within a 75 mile radius of the location from which Plaintiff worked, Plaintiff had worked for Defendant for over a year at the relevant time period, and Plaintiff had worked more than 1,250 hours in the year immediately preceding her request for leave. Plaintiff had a serious health condition within the meaning of FMLA.

132.    Defendant unlawfully failed to inform Plaintiff of her FMLA rights, even after it had sufficient notice to trigger this obligation.  Nevertheless, the leave that was requested and taken by Plaintiff was FMLA protected.

133.   Plaintiff engaged in protected activity because she requested and took FMLA protected leave.

WHEREFORE, Plaintiff demands relief in the form of the amount of economic damages, back pay and front pay, liquidated damages, reimbursement for fees and costs, prejudgment interest, injunctive relief and reinstatement, and any other such relief that the Court deems appropriate.


## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all the issues so triable.

Respectfully submitted,

MAGID & WILLIAMS, P.A.
3100 University Boulevard South
Suite 115
Jacksonville, Florida 32216
(904) 725-6161  (telephone)
(904) 725-3410  (facsimile)


/s/ P. Daniel Williams
P. Daniel Williams
Florida Bar No. 0036625
dan@magidwilliams.com
Samuel B. Kanupp
Florida Bar No. 0067216
sam@magidwilliams.com
Attorneys for Plaintiff